UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
JOSE BAUTA,

Docket No: 14-3725 (FB) (RER)

Plaintiff,

**PLAINTIFF'S MOTION IN LIMINE NO. FIVE TO PRECLUDE TESTIMONY OF DEFENSE EXPERT ANDREW M. CASDEN, M.D.**

-against-

GREYHOUND LINES INC., SABRINA ANDERSON, AKOS GUBICA, KAROLY GUBICA, and CAV ENTERPRISE LLC,

Defendants.
---------------------------------------------------------------------------X

**PLAINTIFF'S MOTION *IN LIMINE* NUMBER FIVE:**

**TO PRECLUDE TESTIMONY OF DEFENSE EXPERT ANDREW M. CASDEN, M.D.**

Plaintiff, JOSE BAUTA ("Plaintiff") hereby moves for an Order, *in limine*, to preclude the testimony of Defendants, GREYHOUND LINES, INC. and SABRINA ANDERSON ("Defendants") expert, Andrew M. Casden, M.D. pursuant to Federal Rules of Evidence §§701, 702 and 703.

**SUMMARY OF MOTION**

This is a motion *in limine* to preclude specific testimony of Defendants' expert, Andrew M. Casden, M.D. Dr. Casden is an orthopedic surgeon retained by Defendants in this matter. He performed an Independent Medical Examination ("IME") on Mr. Bauta on or about September 28, 2016. Dr. Casden was deposed in this case on February 23, 2017. This motion seeks to preclude Dr. Casden's testimony on the following issues:

1) Whether or not Mr. Bauta was displaying "full effort" during portions of the IME, and how that bears on Mr. Bauta's claimed damages;
2) Testimony regarding Mr. Bauta's treatment with other healthcare providers, including but not limited to Andrew Cordiale, M.D., Demetrios Mikelis, M.D., Afran Alladin, M.D., David Capiola, M.D., Donghui Chen, M.D., Jacob Lichy, M.D., Thomas Kolb, M.D., Vincent Visale, P.T., and Terrence Winn, M.D.
3) The nature and extent of Mr. Bauta's lumbar spine disc herniation and hydration;
4) Mr. Bauta's claimed injury to his knee as a result of the collision;
5) Neurological examination and findings at Evangelical Hospital immediately following the collision;
6) Mr. Bauta's fall in February 2014, and any injury sustained as a result;
7) The report and findings of neurologist Hal Gutstein, M.D.;
8) Likelihood of future surgeries Mr. Bauta will have to undergo as a result of his injuries, and the future medical expenses attendant to future care;
9) Opinions or comments on the deposition testimony of Mr. Bauta; and
10) The reasonableness of past medical expenses incurred by Mr. Bauta as a result of the collision.

**BACKGROUND / RELEVANT FACTS**

On October 9, 2013 Plaintiff, Mr. Bauta was a passenger on a greyhound bus involved in a catastrophic collision, resulting in significant injuries to Plaintiff. Mr. Bauta underwent an Independent Medical Examination by defense expert, orthopedic surgeon Andrew M. Casden, M.D. in September 2016. Dr. Casden was deposed in this matter on February 23, 2017 and testified as to his opinions regarding Mr. Bauta's claimed damages and injuries.

Dr. Casden's deposition testimony, as set forth in detail below, warrants exclusion of many of his opinions regarding Mr. Bauta's injuries.

Opinion Re: Best Effort During IME:

First, Dr. Casden testified in his deposition that during the portion of his IME in which he performed muscle testing, Mr. Bauta displayed weakness, which Dr. Casden attributes to "poor effort" in an attempt to refute the nature and extent of Mr. Bauta's injuries; specifically, the radiculopathy suffered as a result of the collision. This testimony, and any evidence presented by the defense, concomitant to this testimony, should be precluded pursuant to Federal Rules of Evidence §§701 and 702. Dr. Casden testified as follows:

> Q: And what test did you perform that demonstrated the weakness?
>
> A: You asked him to resist you to - - a command. So, hold your leg out straight, and then you try and bend the knee for instance . . .It's …muscle testing.
>
> Q: Okay. And why did you feel that it was related to poor effort?
>
> A: You can just get a feel sometimes when you are examining somebody. I have been doing it long enough. It's a subjective test, neurologic testing for motor strength. So, it's not an objective finding. So sometimes you can just get that feeling that somebody is not giving you a good effort.
>
> …
>
> Q: And with respect to the forward bend, what do you attribute that to, the 10 degrees?
>
> A: Well, I mean, it certainly can be due to pain. It can be due to previous surgery, and it can also be –it's again, it's a subjective test. Somebody can just stop bending at that point and tell me that's all they can do, so I don't have any way of knowing.

(Deposition of Andrew Casden, M.D., 16:9-18:13.)

Opinion Re: Records from Other Healthcare Providers:

Second, Dr. Casden testified in deposition on February 23, 2017 that he did not receive and review a number of significant medical records of Mr. Bauta from several of his healthcare

providers. With no foundation for any opinions regarding the care rendered to Mr. Bauta by the healthcare providers whose records Dr. Casden did not review and rely upon, any testimony of Dr. Casden regarding the same, must be precluded. Dr. Casden's testimony was as follows:

> Q: So, you didn't see any of the reports from Dr. Cordiale or Mikelis or Alladin?
> …
> A: I don't recall seeing their actual reports . . .
> …
> Q: What about Dr. Capiola? Did you see his records?
> A: I may have. I don't recall.
> Q: How about Dr. Chen? Did you see Dr. Chen's records?
> A: Not that I'm aware of.
> Q: Did you see Dr. Lichy's records?
> A: Not that I am aware of.
> Q: Dr. Kolb?
> A: Not that I am aware.
> Q: What about Dr. Winn?
> A: Not that I am aware of.
> …
> Q: How about the records of Vincent Vasile. Did you have those?
> A: I don't recall. No, I don't recall.

(Deposition of Andrew Casden, M.D., 25:1-26:10 and 45:9-11.)

<u>Opinion Re: Size and Hydration of Disc Herniation:</u>

Third, Dr. Casden should be precluded from testifying to the jury as to any opinions he has on the size of the lumbar herniated disc and the disc hydration suffered by Mr. Bauta. Dr. Casden testified that there is no foundation for any such opinion.

> Q: In the 2013 MRI, did you see the large herniation that was noted?
> A: I saw a herniation on the left side with a large disk herniation towards the left side at L5-S1.
> Q: Did you measure it?
> A: No.
> Q: Do you have an estimate of how large it is?
> A: No.
> Q: Were you able to look at, since you looked at the films, were you ever able to look at the hydration of that disc?
> A: You look at the hydration of the disc. I never looked at the hydration, nor can I comment on the hydration of a herniation.
> …

> Q: All right. So I want to ask you about that, and let's start with the lumbar films in 2013. Were you able to make any comparisons between the L5-S1 level and the other levels as to their hydration qualities?
> A: The - - - not in my report, so I don't recall.
> …
> Q: If it's not in your report, you didn't do it? Can you say that?
> A: No. I am just saying that I don't specifically have in my report that there were degenerative changes at L5-S1. Although I think there were.

(Deposition of Andrew Casden, M.D., 30:11-31:3; 32:2-14.)

Opinion Re: Plaintiff's Knee Injury:

Fourth, as Dr. Casden was not asked to formulate any opinion regarding Mr. Bauta's knee injury, he should be precluded from presenting any testimony regarding this injury. In his deposition Dr. Casden testified as follows:

> Q: Do you have any opinion as to whether or not the knee injury was casually related to this accident?
> A: I don't have any opinion on that.
> Q: You were not asked to review that?
> A: No. No.

(Deposition of Andrew Casden, M.D., 45:21-46:1.)

Opinion Re: Neurological Findings:

Fifth, Dr. Casden must be precluded from offering expert testimony regarding neurological findings, the existence or absence of, as indicated in Plaintiff's examination at Evangelical Hospital immediately following the collision. Dr. Casden testified as follows:

> Q: Okay. You said in your report that the neurological findings did not correlate. What did you mean?
> A: Well, initially he had no complaints of back pain is one thing . . . No complaints of leg pain in the emergency room. So if this was a large acute disc herniation, one would have expected him to have left leg pain at the time of the injury.

(Deposition of Andrew Casden, M.D., 77:25-78:8.)

However, Dr. Casden failed to bring any materials, including the records of Plaintiff from Evangelical Hospital emergency department, to his deposition.

Opinion Re: Plaintiff's Fall in 2014:

Sixth, Dr. Casden testified in his deposition that he had formulated no opinion regarding whether or not a fall in 2014 had any impact on Mr. Bauta's injuries. (Deposition of Andrew Casden, M.D., 86:1-4.) He offered no comment about whether or not the fall on the ice, subsequent to the collision at issue, contributed to Mr. Bauta's condition. Thus, any opinion from Dr. Casden about this fall would be improper and defendants must be precluded from offering any such opinions.

Opinion Re: Dr. Gutstein:

Seventh, Dr. Casden's report does not identify the records and reports of neurologist, Dr. Gutstein, and Dr. Casden did not bring those records to his deposition, and he shredded these records and did not update his report. As such, Dr. Casden cannot reliably opine on the care rendered to Mr. Bauta by Dr. Gutstein, or the results of any testing performed by Dr. Gutstein. Dr. Casden testified as follows on this issue:

> Q: And what did you note from Dr. Gutstein's records that, if it's not in your report, what do you recollect about it?
> A: I don't recall it offhand.
> Q: So I am assuming if you didn't update your report, and you don't –and you don't know what they said, it wasn't important?
> …
> A: I don't know if they were important. I just didn't update my report after that as I saw those.
> Q: That's what I'm trying to find out. So you have a report.
> A: Correct.
> Q: - - and then you have Dr. Gutstein's records?
> A: Correct.
> Q: And then you shredded Dr. Gutstein's records?
> A: Correct.
> Q: And you did not update your report?
> A: Correct.

(Deposition of Andrew Casden, M.D., 42:1-23.)

<u>Opinion Re: Future Medical Care and Costs of Future Care</u>:

Eighth, Dr. Casden should be precluded from offering any testimony regarding whether or not Mr. Bauta's condition will necessitate future medical care, including future surgery to address ongoing complaints, and a likely manifestation of Adjacent Segment Disease ("ASD"), all resulting in future medical expenses to plaintiff. Dr. Casden's testimony establishes that Dr. Casden is unfamiliar with the literature in the field establishing a likelihood, to a reasonable medical certainty, that a patient who has undergone a spinal fusion will develop ASD.

> Q: Are you familiar with the literature in the field about the percentages and probabilities of additional fusions based on adjacent segment disease after a fusion?
> A: I am familiar with some of the literature, not the specific numbers. The numbers are probably all over the place in terms of what percentages.
> Q: Can you cite any of the literature?
> A: No, I can't.

(Deposition of Andrew Casden, M.D., 110:12-21.)

Similarly, Dr. Casden was not asked to formulate an opinion regarding the costs of future medical care for Mr. Bauta.

> Q: …Were you asked to have an opinion on any cost of future care for Mr. Bauta?
>
> A: I was not asked that, no.

(Deposition of Andrew Casden, M.D., 118:17-21.)

<u>Opinion Re: Deposition of Plaintiff:</u>

Ninth, Dr. Casden testified in his deposition that while he reviewed deposition testimony of the plaintiff in this case, he did not incorporate any portion of that review, or mention it as an information source, in his IME report. As such, an order *in limine* precluding Dr. Casden from opining on the testimony of Plaintiff at trial, is appropriate.

> Q: Okay. Did you read plaintiff's deposition as an expert in the case?
> A: I did. I looked at it. Yes. I don't recall much of it, but I did look at it.

Q; Did you make any comments about any of it in your report?
A: No, I did not.
…
Q: Okay. You didn't make any comments one way or the other?
A: No.

(Deposition of Andrew Casden, M.D., 95:14-96:1.)

Opinion Re: Reasonableness of Medical Expenses:

Significantly, Dr. Casden's deposition testimony in this case establishes that he has no information and no opinion regarding the actual amount of expenses incurred, and he had no opinion whether the charges are reasonable and customary.

Q: What would the facility bill be?
A: I don't know.
Q: Do you have some ballpark?
A: No.
Q: Over six figures?
A: I have no idea.
Q: Would a double level fusion require an overnight stay?
A: Yes.
Q: How much is an overnight stay in a hospital?
A: I don't know.
Q: Here at Mount Sinai?
A: I don't know.
Q: Okay. Okay. Do you have any opinions in this case as to whether or not the bills, the medical bills of Mr. Bauta, the treatment bills, and the surgical bills, and the facility bills, and the conservative care bills, do you have any opinion as to whether or not they are reasonable and customary?
A: I have no clue. I have no idea what was charged for anything.
Q: You were not asked to do that?
A: No.

(Deposition of Andrew Casden, M.D., 106:25-108:7.)

## ARGUMENTS IN SUPPORT OF MOTION

### I. Opinions of Dr. Casden Not Based on Reliable Data Must be Excluded:

#### a. Plaintiff's Effort During IME:

Section 702 of the Federal Rules of Evidence states as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

(Fed. Rules Evid. §702.)

Section 703 of the Federal Rules of Evidence states

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

(Fed. Rules Evid. §703.)

In the case at hand Dr. Casden testified in his deposition that he believed Mr. Bauta was purposefully exerting little effort during the IME when muscle strength was being assessed. This opinion, however, is based on Dr. Casden's "feeling" and not on any objective testing or empirical data. Dr. Casden concedes in his deposition that this is a "subjective" finding.

As such, this testimony is not based on sufficient data, and not the product of a reliable method. Critically, Dr. Casden's opinion regarding effort is wholly subjective and essentially based on Dr. Casden's subjective "feelings" about the patient. Certainly, the subjective feelings of Dr. Casden cannot be considered reliable, would be inadmissible, and cannot form the basis of an expert opinion.

Therefore, testimony and opinions of Dr. Casden regarding Mr. Bauta's effort during the IME, and the implications of that testimony as it relates to his claimed injuries, including radiculopathy, must be precluded.

## II. <u>Testimony and Opinions Not Disclosed in the Expert's Report and Deposition Should be Precluded:</u>

Federal Rules of Civil Procedure § 26(a)(2)(B)(i) governs expert disclosures, and mandates that an expert report must contain a complete statement of all opinions the witness will express and the basis and reasons for them. (F.R.C.P. §26(a)(2)(B)(i).) The clear purpose of this section is to allow the parties to have an opportunity to depose experts about the opinions disclosed in their reports, and to prepare for the testimony that the expert will proffer at the hearing. Indeed, this purpose is in line with a well-established principle of civil litigation that the scope of the expert's opinions at the trial should be limited to the opinions disclosed in that expert's report. (See *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc*. (Fed. Cir. 2006) 467 F.3d 1355, 1368-69 affirming district court's exclusion of expert opinions concerning matters not disclosed in the opening expert reports).

It is "[i]nappropriate for an expert to try to beef up his or her opinion with second thoughts after he or she has already been deposed in connection with the detailed report of his or her opinions." (*Northlake Mktg & Supply, Inc. v. Glaverbel* (N.D. Ill. 1999) 72 F.Supp.2d 893 granting motion in limine to exclude expert from testifying on matters not set out in his initial report.)

### a. Records of Other Healthcare Providers:

Dr. Casden testified in deposition that with respect to the records from numerous healthcare providers treating Mr. Bauta for injuries suffered as a result of this collision, he did not review those records, and he did not produce them at the time of his deposition. As such, Dr. Casden should be precluded from offering opinions regarding those records and the findings contained therein.

**b. The Size and Hydration of Herniated Disc:**

Dr. Casden testified in deposition that he did not measure the size of the disc herniation suffered by Plaintiff, and that he did not evaluate the hydration of the disc, nor could he comment on the hydration. As such, any opinions Dr. Casden attempts to offer at the time of trial on these issues, would be improper and are subject to an order, in limine.

**c. Plaintiff's Knee Injury:**

Again, opinions not disclosed in expert discovery are subject to an in limine motion. Dr. Casden testified that he has no opinion on Plaintiff's knee injury and whether it was casually related to the collision. As such, no opinion regarding the knee injury can be presented by Dr. Casden at the time of trial.

**d. Neurological Findings in ER:**

While Dr. Casden indicates in his report that there are inconsistent neurological complaints, as Mr. Bauta did not report leg pain in the emergency room right after the accident, there must be some basis for that opinion. Dr. Casden did not produce the pertinent records on this issue at the time of his deposition, and did not specifically reference the relevant information from the records. As such, it is unclear what the basis of Dr. Casden's opinion is, and it should be excluded.

**e. Plaintiff's Fall in 2014:**

Dr. Casden testified in deposition that he did not have an opinion about whether or not the 2014 fall on ice contributed to Plaintiff's claimed injuries in this action. As such, any opinion at the time of trial would be improper and should be precluded.

**f. Dr. Gutstein's Findings:**

Dr. Casden did not reference Dr. Gutstein's report or findings in his IME report, and did not bring these records to his deposition, having shredded them. He could also not recall any of the pertinent findings from Dr. Gutstein, at the time of his deposition. As such, Dr. Casden failed to present a reliable opinion regarding Dr. Gutstein's neurological findings, at the time of his deposition, and should be precluded from offering any such opinion at the time of trial.

**g. Plaintiff's Future Medical Care and Costs:**

Dr. Casden was not familiar with the literature establishing the likelihood that a patient who underwent fusion surgery would subsequently develop ASD, requiring surgical intervention. Dr. Casden offered no opinion regarding whether or not, to a reasonable medical certainty, Mr. Bauta would develop ASD and require future surgery, in his deposition. Thus, no opinion by Dr. Casden on this issue would be proper at the time of trial.

**h. Plaintiff's Deposition Testimony:**

Dr. Casden did not produce any copy of the deposition testimony he has reviewed in this case, including the testimony of Plaintiff. He also does not reference Plaintiff's deposition in his expert report as material he reviewed, or a source or foundation for any of his opinions. Thus, any opinion or comment Dr. Casden has regarding the testimony of Plaintiff in his deposition, should be precluded.

**i. Reasonableness of Medical Expenses:**

Dr. Casden was not asked, and did not undertake, to evaluate the medical costs to date incurred by Plaintiff, and whether they are reasonable and customary. In fact, Dr. Casden offered no opinion, whatsoever, on any standard costs associated with the treatment and services that have been rendered to Mr. Bauta to treat his injuries. Therefore, no opinion regarding the

reasonableness and customary expenses for the medical care at issue can be offered by Dr. Casden at the time of trial. He cannot testify as to whether the costs of care was inflated or otherwise unreasonable and he cannot opine on whether the services that Mr. Bauta received could have costs less somewhere else.

**CONCLUSION**

For the reasons discussed above Plaintiff requests that the Court enter the attached order excluding from evidence the specific testimony and opinions of Dr. Casden, as detailed in this motion.

Dated: April 13, 2018

**MCELFISH LAW FIRM**
/s/Raymond D. McElfish
By: Raymond D. McElfish, Esq.
Jamie Diamond, Esq.
Counsel for Plaintiff JOSE BAUTA
1112 N. Sherbourne Drive
West Hollywood, CA 90069
(310) 659-4900
rmcelfish@mcelfishlaw.com

**TO**

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
Thomas P. Mannion, Esq. (0062551) / Tom.Mannion@lewisbrisbois.
Bradley J. Barmen, Esq. (0076515) brad.berman@lewisbrisbois.com
Attorneys for Defendants
***Greyhound Lines, Inc. and Sabrina Anderson***
1375 East 9th Street, Suite 1600
Cleveland, Ohio 44114
Telephone: (216) 344-9422 / Fax: (216) 344-9421

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
Steven B. Saal (2278) / sbsaal@mdwcg.com
Harold L. Moroknek (2158)/ hlmoroknek@mdwcg.com
Nadia E. Niazi, Esq. (7199) / neniazi@mdwcg.com
Co-counsel with Lewis Brisbois
Attorneys for Defendants
***Greyhound Lines, Inc. and Sabrina Anderson***
800 Westchester Avenue, Suite C-700
Rye Brook, New York 10573
Telephone: (914) 977-7300/Fax: (914) 977-7301

**DECLARATION OF RAYMOND D. MCELFISH**

I, Raymond D. McElfish, declare:

1. I am an attorney at law duly admitted to practice before all of the courts of the State of California, and am the principal of McElfish Law Firm, attorneys of record herein for Plaintiff JOSE BAUTA ("Plaintiff"). I have personal knowledge of the matter set forth in this Declaration and, if called as a witness I could and would competently testify thereto.

2. This Declaration is made in support of Plaintiff's Motion in Limine to preclude Defendants GREYHOUND LINES, INC. and SABRINA ANDERSON ("Defendants"), their attorneys and witnesses from introducing testimony and opinions of expert Andrew Casden, M.D.

3. A true and correct copy of an excerpt of the deposition of Dr. Casden, taken 2/23/2017, is attached hereto as Exhibit A.

4. A true and correct copy of Dr. Casden's September 28, 2016 IME Report for Mr. Bauta, is attached hereto as Exhibit B.

5. I have extended the invitation to meet and confer on this matter to the defense counsel. I further extended the invitation to the defense counsel to continue to meet and confer on this matter up until the trial in this matter. No agreement has been reached as of the filing of this Motion. Plaintiff and plaintiff's counsel remain willing to continue meet and confer discussions regarding this Motion, and to withdraw the Motion should the parties reach a stipulation regarding the issues addressed in this motion. The meet and confer correspondence between the parties are attached hereto at Exhibit C.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 13th day of April, 2018, in West Hollywood, California.

/s/Raymond D. McElfish

**CERTIFICATE OF SERVICE**

I Michelle Healy hereby certify that on April 13, 2018, the foregoing Plaintiff's Motion in Limine No. Five was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon all counsel of record via ECF. I hereby certify that I have served all counsel of record in the manner authorized by the Federal Rules of Civil Procedure 5(b)(2).

/s/ Michelle Healy