```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


------------------------------------X
                                    :
JOSE BAUTA,                         :
                                    :   14-CV-03725 (RER)
                    Plaintiff,      :
                                    :
           v.                       :   225 Cadman Plaza
                                    :   Brooklyn, New York
GREYHOUND LINES, INC., et al.,      :
                                    :   May 29, 2019
                    Defendants.     :
------------------------------------X

     TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
           BEFORE THE HONORABLE RAMON E. REYES, JR.
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          RAYMOND D. McELFISH, ESQ.
                            McElfish & Associates, LLC
                            60 East 42nd Street
                            Suite #2100
                            New York, New York 10168

For Greyhound Lines,        BRADLEY JAMES BARMEN, ESQ.
Inc.; Sabrina               Lewis Brisbois Bisgaard &
Anderson:                     Smith, LLP
                            1375 East 9th Street
                            Suite #1600
                            Cleveland, Ohio  44114

                            STEVEN SAAL, ESQ.
                            Marshall Dennehey Warner
                              Coleman & Goggin
                            800 Westchester Avenue
                            Suite #C-700
                            Rye Brook, New York 10573

Court Transcriber:          SHARI RIEMER, CET-805
                            TypeWrite Word Processing Service
                            211 N. Milton Road
                            Saratoga Springs, New York 12866

                    (Appearances continued on next page.)


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

```
 1                                                                    2

 2

 3    APPEARANCES (CONTINUED):

 4    For Greyhound Lines,       JONATHAN SHAUB, ESQ.
      Inc.; Sabrina              Shaub, Ahmuty, Citrin & Spratt, LLP
 5    Anderson:                  77 Water Street, Suite 702
                                 New York, New York 10005
 6
                                 ROBERT ORTIZ, ESQ.
 7                               Shaub, Ahmuty, Citrin & Spratt, LLP
                                 1983 Marcus Avenue, Suite 260
 8                               Lake Success, New York 11042

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1   (Proceedings began at 4:59 p.m.)
 2            THE COURT:  Good afternoon.  This is Magistrate
 3   Judge Reyes.  We are holding a telephone conference in the
 4   case of Bauta v. Greyhound, et al., docket number 14-CV-32725,
 5   excuse me, 3725.
 6            Counsel for the plaintiff, please state your name
 7   for the record.
 8            MR. McELFISH:  Raymond McElfish for the plaintiff.
 9   Good afternoon, Judge.
10            THE COURT:  Good afternoon.  Counsel for the
11   defendants, starting with Mr. Barmen.
12            MR. BARMEN:  Brad Barmen.  Brad Barmen, Your Honor,
13   for Greyhound and Sabrina Anderson.  How are you?
14            THE COURT:  Good.  Who else is on the line?
15            MR. SHAUB:  Jonathan Shaub for the Greyhound
16   defendants.  Good afternoon, Your Honor.
17            MR. ORTIZ:  Robert Ortiz for Greyhound and Sabrina
18   Anderson.  Thank you, Your Honor.
19            MR. SAAL:  Steven Saal for Greyhound and Sabrina
20   Anderson.  Good evening, Your Honor.
21            THE COURT:  Good evening.  Anyone else?
22            Okay.  All right.  I wanted to talk to you about
23   Greyhound's pre-motion letter, it's Docket No. 752, and the
24   concern I have as far as scheduling.  So I think this -- you
25   know, I'm going to be very frank.  I think this presents an
```

1  interesting issue that I'm not sure how it gets resolved.
2         But I'm concerned that it should be resolved prior
3  to continuing the proceedings on the pain and suffering past
4  and future because even if Greyhound is right that we would
5  have to have a, as Mr. McElfish just pointed out in his
6  opposition letter, we would have to have a trial on punitive
7  damages for Greyhound as opposed to Ms. Anderson because if
8  collateral estoppel doesn't apply to the jury's verdict
9  against Greyhound on punitive damages, then Mr. Bauta would be
10 entitled to try that issue because Greyhound couldn't hold the
11 Pennsylvania and Philadelphia actions or the Pennsylvania
12 actions against Mr. Bauta because he wasn't part of that.
13        MR. SHAUB:  Your Honor, it's Jonathan Shaub.  I have
14 a couple of thoughts on this that I think goes directly to
15 that issue.  I think at this point there is a judicial
16 estoppel.  Mr. Bauta was well aware of this risk of what would
17 happen if we proceeded with trial before a resolution of the
18 appeals in Pennsylvania.  He was given multiple opportunities
19 to avoid this exact situation by the Court, and he read the
20 brief.  And his option was to try the case, agree to a stay,
21 or accept collateral estoppel.  He decided to proceed down the
22 collateral estoppel path.  And at this point, he can't discard
23 the Pennsylvania verdict simply because it came out poorly for
24 him.  He's judicially estopped.  He is in privity with those
25 plaintiffs having decided to avail himself of the Pennsylvania

5

1  verdict.
2          So it's our position that the dismissal by the -- or
3  the Pennsylvania court's termination that there's no basis for
4  independent liability precludes Mr. Bauta from litigating that
5  very issue in this [indiscernible].
6          THE COURT:  Well, that brings a couple of questions
7  -- issues into question.  So why don't we take a step back.
8  Why don't you explain to me how this decision which did not
9  alter the judgment changes the determination on collateral
10 estoppel as to Greyhound on punitive damages?
11         MR. SHAUB:  Mr. McElfish's theory of the case if you
12 look at his complaint on through his joint pretrial order and
13 looking at his motion for collateral estoppel and reading the
14 charge in this case and the verdict form in this case was
15 based on a theory that Greyhound was independently liable for
16 punitive damages.  His entire case, as you'll remember, was
17 the G-40 issue and the failure to enforce the 150-mile rule.
18 And that's all --
19         THE COURT:  That is not true.  That is not true.
20 His entire case was not that.  It was also on the inadequacy
21 of Greyhound's fatigue management program as a whole.  There
22 was expert testimony to that effect, and so --
23         MR. SHAUB:  But you now have -- the Pennsylvania
24 court has now determined based on the exact same evidence
25 having considered based on this Court's decision that only the

6

1  evidence in Pennsylvania would be the evidence that was
2  admissible and the decision would be based on in this case.
3  The Pennsylvania appellate court viewed all of that evidence
4  as the same evidence that came in in this case and said
5  there's no independent basis for liability against Greyhound.
6  The -- I'm sorry, Your Honor.
7            THE COURT:  They only addressed the G-40 issue.
8            MR. SHAUB:  I don't know that we can make that
9  distinction here if the entire case -- the evidence in this
10 case was exactly the evidence that was heard by the
11 Pennsylvania jury.  And that was the same evidence that was
12 heard by this jury.  And you have the Pennsylvania court now
13 saying that that evidence in the Pennsylvania case  which is
14 the decision and the evidence that this collateral estoppel
15 order was based on was insufficient to find liability.
16           THE COURT:  Well, they said one aspect of the
17 evidence, the G-40 evidence.  They didn't talk -- there was no
18 discussion in that decision of the fatigue management system
19 as a whole, whether it was adequate or not.  So I'm at a loss
20 here because I see a written decision from an appellate court
21 that is almost in short hand that I have no briefs, I have --
22 I don't see what the arguments were -- made and whether they
23 encompass everything.
24           So that's why I wanted to talk to you because I just
25 don't know.  I don't know.

7

1          MR. SHAUB:  But, Your Honor, i think we're slicing
2   it a little too thinly.  They reviewed the trial transcript,
3   and they determined that there was no independent basis, that
4   they listed every single ground --
5          THE COURT:  Well --
6          MR. SHAUB:  -- upon which independent liability was
7   based.  I'm not sure that's really relevant when they've
8   determined that as a matter of law that there was no conscious
9   disregard of a known risk.
10          THE COURT:  But they didn't -- still they didn't
11  reverse the decision.  They didn't reverse the judgment, and
12  they could have.  They could have said the judgment is
13  reversed to the extent that Greyhound was found independently
14  liable for punitive damages.  However, it still remains
15  vicariously liable for Anderson's conduct that was sufficient
16  for punitive damages.  And the dollar amount was the same.  It
17  was in one line.  It's what are your punitive damages against
18  Anderson and Greyhound.  I think that's one of the reasons why
19  we broke it out in our verdict form because we needed to know.
20          MR. SHAUB:  Right.  And I think, Your Honor, you've
21  hit a very interesting point.  The Pennsylvania court didn't
22  need to do that because it was a single line item.  Here we do
23  have those two line items, and here the charge was they're
24  independent conduct.  And I just -- if there's a Pennsylvania
25  court saying there's in independent basis for liability, I

8

1  don't know that we read further into the decision.  It is said
2  there's no independent basis for liability.  And that should
3  be the end of the discussion here.
4           THE COURT:  I don't -- but I don't know if that --
5  if the argument about the fatigue management program was made
6  to them or anything like that.  They may have -- you may --
7  Greyhound may have just argued G-40.  In this case, that is
8  only one part of Mr. McElfish's argument that he made to our
9  jury and that apparently was made to the Pennsylvania juries,
10 too.
11          MR. SHAUB:  But I think that that --
12          THE COURT:  Otherwise, I wouldn't have allowed it
13 in.
14          MR. SHAUB:  But that's exactly the issue.  It was
15 made to the Pennsylvania jury and the Court has now determined
16 in Pennsylvania that there's no independent basis for
17 liability for Greyhound.  We have consciously coupled these
18 two -- the evidence in these two cases together so I just
19 don't know how we escape that.  If there was -- all the
20 evidence was considered by the Pennsylvania court --
21          THE COURT:  No, wait, wait.  The final sentence
22 before -- I mean you're reading a whole lot, Mr. Shaub, into
23 that decision because the final sentence before the conclusion
24 says, "Accordingly, we need not and do not address whether the
25 trial court erred in its rulings concerning Rule G-40 or

9

1 whether there was sufficient evidence to support an
2 independent liability claim against Greyhound for its own
3 actions as a company."
4          They didn't address that.
5          MR. SHAUB: Your Honor?
6          THE COURT: They didn't address that because it
7 doesn't matter, there's vicarious liability. There was one
8 verdict amount. Greyhound's stuck with that. That's what
9 happened.
10         MR. SHAUB: I understand, Your Honor. But I think
11 what they were saying there is that the G-40 policy as to the
12 issue of negligence, not as to the issue of punitive damages,
13 they're saying we're not going to address whether G-40 is a
14 sufficient basis to find negligence. It doesn't say anything
15 about the punitive damages in that last section.
16         MR. BARMEN: Your Honor, this is Brad Barmen. Would
17 it benefit the Court if we provided you with all the briefing
18 from the Pennsylvania appeal both Greyhound's and the
19 plaintiff's?
20         THE COURT: The only way to resolve this issue fully
21 and adequately is have full briefing on it with whatever
22 exhibits or anything you think are based on the conversation
23 we're having now is warranted, including -- I would say I need
24 to see the briefs. I'd need to see the transcript of the oral
25 argument. Was there an oral argument or was it just done on

10

1  paper?

2  MR. BARMEN: There was an oral argument, Your Honor.

3  THE COURT: All right. I would need to see -- I
4  would need to see the entirety of it because I'm not sure it
5  goes as far as Mr. Shaub claims it does. But the question --
6  the reason why I made this call or wanted to have this pre-
7  motion conference was, you know, something that I feared and
8  I've said several times to you folks, you know, I don't want
9  to have Bauta 3 and Bauta 4. I'd just like to have Bauta 2
10 and be done with it.

11 So, we're going to run -- if we go forward on, what
12 is it --

13 MR. BARMEN: The 10th.

14 THE COURT: -- the 10th on just past and future pain
15 and suffering, the retrial of that, and we allow this
16 briefing, which I'm going to allow because I think it's an
17 important issue. I just don't know the answer to it. Maybe
18 Greyhound's right and maybe they're wrong. If they're wrong
19 -- if they're right, we have to have another trial because I
20 don't think -- I'd like to hear more about this judicial
21 estoppel, but I'm not sure it flies.

22 But if Greyhound -- even if Greyhound is right,
23 there's going to be Bauta 3, I think. And then you're going
24 to appeal from that and Bauta 2 because you're not going to be
25 satisfied with that. And the Court of Appeals is going to --

                                                                11

 1  may throw it all back for Bauta 4.  So I guess this question
 2  goes to Mr. McElfish really.  And you can answer any other
 3  questions you want to, Mr. McElfish.  I understand that you're
 4  under difficult circumstances right now.  I'm sorry to pull
 5  you away from it.  But --
 6            MR. McELFISH:  Okay.
 7            THE COURT:  -- but if we go forward on the 10th and
 8  Greyhound convinces me they're right but they're wrong on
 9  judicial estoppel, you're going to be coming back to New York
10  for Bauta 3.  Is that something that you want?
11            MR. McELFISH:  Well, what I want --
12            THE COURT:  You know you want.
13            MR. McELFISH:  What I want which is what I think any
14  lawyer in my position should want is the most efficient proper
15  resolution of this, whatever that means.  So if you feel based
16  on looking at the papers that you need more time to avoid not
17  only a retrial in Bauta 2 on non-economic but a potential
18  retrial in Bauta 3 on punitive damages, I think you -- I think
19  it needs to wait because as badly as I want to move on with
20  the trial, I'm not really -- I have to accept the fact that if
21  I try the case on June 10th as it's currently positioned, I'm
22  not really moving on with anything.  I might feel like I'm
23  moving on for a minute, but no one's moving on because this
24  issue's hanging out there.
25            So if you would like to brief the issue and then

12

1  reset the trial for, you know, a couple of months from now or
2  whatever, I think that's the right thing to do for the reasons
3  you've given.
4              MR. BARMEN:  And, Your Honor, this is Barmen.  I'm
5  admittedly the least intellectual of all the people on this
6  call.  But I don't understand how collateral estoppel can
7  apply when it benefits the plaintiff but then not apply when
8  it doesn't.  I just -- I'm not wrapping my -- obviously, I'm
9  missing something here.  But if he's in privity enough for it
10 to apply to his benefit, I don't understand how that same
11 privity doesn't apply --
12             THE COURT:  No, he doesn't have -- well, look, I
13 haven't considered Mr. Shaub's argument of judicial estoppel
14 and maybe you're arguing something else.  But he doesn't have
15 to be --
16             MR. BARMEN:  But I agree with Mr. Mcelfish in that
17 if this is going to be an issue, this potentially is going to
18 lead to another trial if we go forward on June 10th.  I
19 certainly from my standpoint and that of my client, I am in
20 agreement with Mr. McElfish that it's best -- if there's any
21 question, it's best to wait so if we -- when we do it again,
22 we only do it once unless ultimately a court of appeals makes
23 us do it again.
24             MR. SHAUB:  Your Honor, it's Mr. Shaub again, and
25 just one other point.  There has been a petition to the

1   Pennsylvania Supreme Court to review the punitive damages
2   award, the decision as it relates to punitive damages award
3   against Ms. Anderson in this case.  And that raises another
4   concern to this idea of judicial economy.  The appeals process
5   isn't necessarily done in this case yet either.  So there is
6   also a possibility of an adverse decision or a decision that
7   gets rid of the punitive damages against Ms. Anderson in this
8   case so then we can have Bauta 6 or 7 [indiscernible].
9              THE COURT:  All right.
10                  [Pause in proceedings.]
11             THE COURT:  Okay.  When -- so  Greyhound appealed
12  the Anderson punitive damages to the Pennsylvania Supreme
13  Court?
14             MR. SHAUB:  Your Honor, they [indiscernible],
15  though.  It's not an appeal as of right.
16             THE COURT:  Oh, it's --
17             MR. SHAUB:  So they [indiscernible].
18             THE COURT:  It's similar to a New York Court of
19  Appeals, okay.
20             MR. SHAUB:  Correct.  This is my understanding of
21  it.
22             THE COURT:  All right.  When was that filed?
23             MR. SHAUB:  Today, Your Honor.
24             THE COURT:  And if leave is granted, then they have
25  to have briefing and what we'll be here another -- you might

1  come back a year and a half, two years from now with a motion
2  to set aside Anderson's punitive damage verdict?
3          MR. SHAUB:  Potentially, yes, Your Honor.  And I
4  think that's why the federal court in Pennsylvania stayed that
5  case when the last appeal was filed, and the Pennsylvania
6  state court stayed the remaining case there for the same
7  reason.
8          THE COURT:  I got to say it's -- they're going to be
9  hard pressed to reverse that verdict, though.  I mean there
10 was ample evidence against her that she drove tired.
11         MR. SHAUB:  Well, yeah, but the Pennsylvania
12 standard is so stringent for punitive damages and there's
13 plenty of cases out there of drivers fell asleep at the wall.
14 And that didn't rise to the level of punitive damages under
15 Pennsylvania law.
16         THE COURT:  Okay.  If -- I'll decide by tomorrow
17 because I know you probably want to change your plans and
18 cancel your reservations if you can.  I'll decide what I'm
19 going to do by tomorrow.  And if it is adjourned, I will give
20 you a briefing schedule, and I will give you specific issues
21 to brief because I am -- ultimately, one of the biggest issues
22 is whether if Greyhound is correct, whether Mr. Bauta would be
23 estopped from having Bauta 3 on punitive damages against
24 Greyhound.
25         I just don't see it right now, but I haven't seen

```
                                                                    15
 1   the arguments laid out.  So look for an order tomorrow.  All
 2   right?
 3              MR. SHAUB:  Okay.
 4              UNIDENTIFIED SPEAKER:  Yes, Your Honor.
 5              UNIDENTIFIED SPEAKER:  Thank you.
 6              MR. McELFISH:  Judge?
 7              THE COURT:  Yeah.
 8              MR. McELFISH:  McElfish here.  Are you planning on
 9   setting another trial date or anything like that as well
10   because I would just like to be in front of my calendar if I
11   do -- if you do.
12              THE COURT:  Yes.  I will likely not do that.  In the
13   order, I will just adjourn the trial, issue a briefing
14   schedule, and give you an idea on the issues.  And then later
15   we'll figure out when to have the trial.  Yes, when given all
16   these other appeals and all that stuff that's floating around.
17              All right?
18              MR. McELFISH:  Okay.
19              THE COURT:  Thank you everyone.
20              ALL ATTORNEYS:  Thank you, Your Honor.
21   (Proceedings concluded at 5:20 p.m.)
22                         *  *  *  *  *  *
23
24
25
```

```
                                                                    16
  1        I certify that the foregoing is a court transcript from
  2   an electronic sound recording of the proceedings in the above-
  3   entitled matter.
  4
  5                              _____
  6                                   Shari Riemer, CET-805
  7
  8   Dated:  May 30, 2019
```