UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
JOSE BAUTA,

        Plaintiff,

   -against-

GREYHOUND LINES, INC., SABRINA
ANDERSON, AKOS GUBICA, KAROLY
GUBICA, C.A.V. ENTERPISE, LLC, and
FIRSTGROUP AMERICA, INC.,

        Defendants.
-------------------------------------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-3725 (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

    Defendant Greyhound Lines, Inc. ("Greyhound") has moved "to vacate and set aside" a $1,536,625 punitive damages verdict awarded to Jose Bauta ("Bauta" or "Plaintiff") following a two-week jury trial. (Dkt. No. 787). Greyhound also moves to dismiss Plaintiff's claim for punitive damages, or in the alternative seeks leave to file a motion for summary judgment on the issue. (*Id.*) For the reasons which follow, Greyhound's motion is granted in part.[1]

**BACKGROUND**

    In the early morning on October 9, 2013, a Greyhound bus driven by defendant Sabrina Anderson ("Anderson") collided with the rear of a tractor trailer on Interstate 80 in Pennsylvania (the "accident"). Many of the bus passengers, including Bauta, were injured, some seriously, as a result of the accident.[2] Several bus passengers injured in the accident sued Greyhound and

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. No. 33).

[2] One passenger was killed and others had limbs amputated and other similarly serious injuries.

Anderson (collectively, "Greyhound Defendants") in Pennsylvania and Ohio.[3]

In Pennsylvania, the Court of Common Pleas of Philadelphia County consolidated for trial two multi-plaintiff actions. In July 2016, a Pennsylvania jury returned a verdict in the plaintiffs' favor, finding the Greyhound Defendants 100% liable for the accident. (Dkt. No. 671-2 at 4). The other defendants, Akos and Karoly Gubica (the "Gubicas"), the driver and owner of the tractor trailer involved in the accident, and CAV Enterprises ("CAV"), the corporate owner of the tractor trailer, were found not liable. (*Id.*). The Pennsylvania jury awarded the four plaintiffs compensatory damages totaling $3,050,000 and punitive damages of $500,000 each. (*Id.* at 5-7).

While the Pennsylvania case was proceeding, Bauta filed suit against the Greyhound Defendants and the Gubicas in New York state court. (Dkt. No. 1-1 ("Compl.") ¶ 18). Defendants removed the action to this Court on June 12, 2014 (the "*Bauta* action"). (Dkt. No. 1).[4] On August 25, 2016, Plaintiff filed a summary judgment motion based on collateral estoppel, asserting that the Pennsylvania court had denied the Greyhound Defendants' post-trial motions and ruled that the jury's liability determination was final for collateral estoppel purposes. (Dkt. No. 196); *see Livingston v. Greyhound Lines, Inc.*, 208 A.3d 1122, 1127 (Pa. Super. 2019)). The undersigned granted Bauta's motion over the Greyhound Defendants' objections, "subject to reconsideration following a decision by the Pennsylvania Superior Court." (Order dated 3/10/2017).[5]

---

[3] In January 2016, a jury in Ohio returned a verdict finding Greyhound and Anderson liable for the accident. (Dkt. No. 714-6). The jury awarded the plaintiff passenger $23,018,790 in compensatory damages and $4,000,000 in punitive damages. *Id*.

[4] Greyhound filed crossclaims against the Gubicas and a third-party complaint against CAV. (Dkt. Nos. 5, 50). Plaintiff amended the Complaint twice to include CAV and First Group America, Inc., Greyhound's parent company. (Dkt. Nos. 55, 66). First Group America moved for and was granted judgment on the pleadings because the Court did not find alter-ego liability. (Dkt. Nos. 152, 178).

[5] This Order also dismissed Greyhound's crossclaims against CAV and the Gubicas. (*Id*.).

2

The Court's collateral estoppel ruling decided the issue of liability for compensatory and punitive damages but not the amount of such damages. With respect to punitive damages, Bauta was given the option of accepting the same amount the Pennsylvania jury awarded to each of the plaintiffs or trying the amount of punitive damages to an Eastern District jury. (Dkt. No. 307 at 17–18). Bauta chose the latter. (Dkt. No. 313).

Bauta's claims for compensatory and punitive damages were bifurcated for trial. (Order dated 4/14/2018 granting Dkt. No. 343). On May 21, 2018, following four weeks of testimony, the jury awarded Bauta compensatory damages for past and future medical costs and pain and suffering. (Minute Entry dated May 21, 2018). On June 1, 2018, following two weeks of testimony from Greyhound employees, other bus passengers, and multiple experts in accident reconstruction and sleep science, the jury awarded Bauta $3,235,000 in punitive damages: $1,536,625 against Greyhound and $1,698,375 against Anderson.[6] (Dkt. No. 697). On July 3, 2018, the Court entered judgment in Bauta's favor. (Dkt. No. 710).[7]

Following entry of the judgment, the parties filed post-trial motions pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. (Dkt. Nos. 726 and 729). On January 4, 2019, the Court issued its decision on those motions. (Dkt. No. 744). The Greyhound Defendants' motion was largely denied, except for their request for judgment as a matter of law on Bauta's claim for future internal medicine expenses. (*Id.* at 12-13). Bauta's motion was also largely denied, except for his request for a new trial on the issues of past and future pain and suffering. (*Id.* at 45-49). The retrial was scheduled for June 10, 2019. (Dkt. Entry dated January 16, 2019).

---

[6] During the punitive damages trial, the parties were limited to presenting only that evidence which had been admitted in the Pennsylvania action. (Dkt. No. 313; Order dated 3/14/2018).

[7] The Court later amended the judgment to account for certain collateral source payments which Bauta received for the damages he sustained in the accident. (Dkt. Nos. 709, 723).

3

While the parties were preparing for the June 10th retrial, the Superior Court of Pennsylvania issued its decision on the Greyhound Defendants' consolidated appeals from the judgments below. *See Livingston v. Greyhound Lines, Inc.*, 208 A.3d 1122 (Pa. Super. 2019). Under Pennsylvania law, which applies here,[8] "punitive damages can be awarded against a defendant only if the plaintiff shows that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and acted or failed to act in conscious disregard of that risk." *Id.* at 1130 (citing *Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005); *Dubose v. Quinlan*, 125 A.3d 1231, 1240 (Pa. Super. 2015), *aff'd*, 173 A.3d 634 (Pa. 2017)). On appeal the Greyhound Defendants argued that the evidence at trial failed to establish that Anderson had subjective knowledge that she was too fatigued to drive on the night of the accident and that Greyhound had subjective knowledge of an allegedly inadequate driver fatigue prevention program. *Id.* Accordingly, the Greyhound Defendants contended that the Pennsylvania plaintiffs did not establish their liability for punitive damages so the Pennsylvania trial court erred in denying their post-trial motion for judgment notwithstanding the verdict. *Id.* at 1127–28.

The Pennsylvania Superior Court disagreed with the Greyhound Defendants with regard to Anderson's subjective knowledge of her fatigue on the night of the accident, finding that there was sufficient evidence adduced at trial to conclude that she had such knowledge, and therefore affirmed the punitive damages award against her. *Id.* at 1131. The court agreed, however, that there was insufficient evidence for the jury to find that Greyhound as a company had subjective knowledge or consciously disregarded the risk. *Id.* at 1132. Nevertheless, the court affirmed the punitive damages judgment against Greyhound because Pennsylvania law allows a jury to hold an

---

[8] The Court's January 4, 2019, Order denying Greyhound's Motion for a New Trial re-examined and re-determined that Pennsylvania law governs the issues of liability and punitive damages in *Bauta*. (Dkt. No. 744 at 18).

4

employer liable for punitive damages based entirely on the reckless conduct of an employee. *Livingston*, 208 A.3d at 1133 (citing *Dillow v. Myers*, 916 A.2d 698, 702 (Pa. Super. 2007); *Dean Witter Reynolds, Inc. v. Genteel*, 499 A.2d 637, 643 (Pa. Super. 1985)).[9] In other words, the court determined that while Greyhound was not individually liable for punitive damages based on its own conduct, it was vicariously liable for punitive damages based on Anderson's conduct.

After the Pennsylvania Superior Court issued its decision, Greyhound saw an opportunity to challenge the *Bauta* punitive damages verdict and filed the instant motion. (Dkt. No. 787). Greyhound's argument is simple: the Pennsylvania appellate court's "explicit determination that the evidence adduced at trial in the Pennsylvania Action did not support a finding that Greyhound's individual conduct warranted the imposition of punitive damages strips the jury's finding to the contrary of its preclusive effect" in this case, notwithstanding the fact that the underlying judgment was affirmed. (Dkt. No. 787-6 at 12) (citing *Speyer, Inc. v. Goodyear Tire & Rubber Co.*, 295 A.2d 143, 147 (Pa. Super. Ct. 1972); *Tydings v. Greenfield, Stein,* 11 N.Y.3d 195, 197 (N.Y. 2008); *Indus. Risk Insurers v. Port Auth.*, 493 F.3d 283, 288 (2d Cir. 2007); RESTATEMENT (SECOND) OF JUDGMENTS §27 cmt. o (1982)). "In other words, the Pennsylvania Action can no longer serve as a basis for applying collateral estoppel with respect to Greyhound's individual conduct" because "the legal basis for imposing punitive damages against Greyhound has dissipated." (*Id.* at 12–13).

Bauta opposes Greyhound's motion because, as he argues, the Superior Court's decision affirmed the determination of Greyhound's liability for punitive damages; "Once collateral estoppel attaches, it remains in place, unless and until the prior court overturns or modifies that

---

[9] Following the Pennsylvania Superior Court's decision, the Greyhound Defendants discontinued their consolidated appeals (Dkt. No. 792-1 at 2) and filed satisfactions of judgment. (Dkt. No. 792-2). These filings preclude Greyhound from further challenging the Pennsylvania Superior Court's decision and thus, the Pennsylvania Superior Court's decision is final.

5

judgment on the merits." (Dkt. No. 789 at 5 (citing *Shaffer v. Smith*, 543 Pa.2d 526, 673 A.2d 872 (1996)). Bauta argues that following the Pennsylvania Superior Court's decision the underlying judgment was not reversed and Greyhound remains liable for the entire amount of punitive damages, even if it is based on a theory of vicarious liability, and thus the judgment has not lost its preclusive effect. (*Id.* at 15).

## **LEGAL STANDARD**

Greyhound moves this Court pursuant to Fed. R. Civ. P. 54(b), the Court's Order dated March 10, 2017, leaving open reconsideration of the applicability of collateral estoppel, and the Court's "inherent power to revisit a prior decision." (Dkt. No. 787 at 1). Greyhound seeks an Order that vacates and sets aside the jury's award of punitive damages against it and further dismisses any claim of punitive damages against the company, or in the alternative, allows Greyhound to file a motion for summary judgment as to Bauta's punitive damages claims against it. (*Id.*).

Rule 54 of the Fed. R. Civ. P. states in pertinent part:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . .. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Entry of a final judgment must be clearly intended by the court in multiple claims or parties actions. *See Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 747 (2d Cir. 1976); *see also* Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2660 (4th ed.) ("A strong policy in favor of certainty as to the district court's intention to give its decision final-judgment status underlies the rule's procedure."). The Court of Appeals for the Second Circuit has "repeatedly stressed the importance of strict adherence to the certification requirements of Rule 54(b)" if any judgment in a multiple claim or party action

6

is to be considered final. "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Int'l Controls Corp.*, 535 F.2d at 747 (quoting *Catlin v. U.S.*, 324 U.S. 229, 233 (1945); internal quotation marks omitted).

Where the Court orders a retrial on one issue, but declines to do the same as to another, any previously entered judgment is not final "as to any of the claims," absent an entry of a partial final judgment pursuant to Rule 54(b).[10] Fed. R. Civ. P. 54(b); *see In re Shengdatech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2015 WL 3422096, at *3 (S.D.N.Y. May 28, 2015); *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999) (finding it appropriate for judge to order retrial on some but not all issues, even when issues are related). "This rule seems mandated by the decision in *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 148 (1980)." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 3950 (4th ed.). The Supreme Court's reasoning in *Washington* was based on a fear that a contrary ruling "would force some litigants to broaden new-trial motions to include issues that otherwise would be omitted, and might prove a procedural pitfall 'devoid of any sound supporting rationale but capable of occasionally tripping those ho failed to insert a line of boiler-plate or file a redundant slip of paper." *Id.* (quoting *Washington*, 447 U.S. at 148).

Where a court's decision or order is not final, Rule 54(b) provides that the court may "revise[] [the order or decision] at any time before the entry of a judgment . . .." Fed. R. Civ. P.

---

[10] There is one exception to the rule: if the unresolved issues are "routine" or "ministerial," the Court of Appeals may infer finality for purposes of avoiding piecemeal appellate review. *In re Vivendi Universal, S.A. Sec.*, 765 F. Supp. 2d 512, 586–87 (S.D.N.Y. 2011) (referring to *Morgan v. U.S.*, 968 F.2d 200, 204 (2d Cir. 1992)), *aff'd sub. nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). An order remanding a judgment to a magistrate judge to correct an arithmetic error is considered "merely routine" and does not alter a determination of finality because the decision will not likely be appealed. *Morgan*, 968 F.2d at 204. Conversely, finality may not be inferred where, absent a Rule 54(b) certification, an issue of liability is resolved but not the amount of damages, *see Taylor v. Bd. of Educ.*, 288 F.2d 600, 602 (2d Cir. 1961), or an order dismisses claims against only one party in a multiple parties action. *See In re Shengdatech*, 2015 WL 3422096, at *4.

54(b). Notwithstanding this discretionary language, the Second Circuit has found that litigants moving for reconsideration pursuant to Rule 54(b) must have "good reason." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934 (1964)); *see also In re Nassau County Strip Search Cases*, 958 F.Supp.2d 339 (E.D.N.Y. 2013) ("[T]he Second Circuit 'has repeatedly stated [that it] will not depart from the law of the case absent cogent or compelling reasons.' (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation marks and alteration omitted))). "The major grounds for justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atlantic Airways, Ltd.,* 956 F.2d at 1255 (quoting Wright, Miller & Cooper, 18 Fed. Prac. & Proc. Civ. § 4478). Where a party moves for reconsideration but does not assert one of these three justifications, the Rule 54(b) motion is without merit. *Id*.

## DISCUSSION

As an initial matter, the judgment as to punitive damages against Greyhound is not final for purposes of Rule 54(b). Even though the Court's ruling on the Parties' posttrial motions had no effect on the jury's verdict for punitive damages, it left Bauta's other claims unresolved; the Court ordered a new trial on the issues of past and future pain and suffering which has not yet taken place. (Dkt. No. 744 at 45–49). Because claims related to past and future pain and suffering are neither "ministerial" nor "routine," *see supra,* n.10, and the Court has not entered partial judgment in this action, the punitive damages judgment against Greyhound is not considered final. Additionally, the Court reserved the power to reconsider its decision of granting collateral estoppel until after the Pennsylvania Superior Court decision. (Order dated 3/10/2017). A court's

reservation to modify or revise a decision at a later date indicates a lack of finality. Wright & Miller 10 Fed. Prac & Proc. Civ. § 2656 (4th ed.) A lack of finality, however, does not end the inquiry of whether Greyhound's Rule 54(b) motion has merit. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok*, 327 F.2d at 953.

Greyhound's argument in favor of its Rule 54(b) motion may be summarized as follows: the Pennsylvania Superior Court's decision, which found that there was insufficient evidence to hold Greyhound independently liable for punitive damages,[11] affects the *Bauta* verdict because, despite the Superior Court's affirmation of the Pennsylvania judgment, the jury instructions and verdict form in *Bauta* differed in material ways that do not allow this Court to infer, as the Pennsylvania Superior Court had done, that the jury's verdict could have been based upon a theory of vicarious liability. (*See generally* Dkt. No. 791). The Court agrees with this argument.

The *Bauta* jury instructions did not provide the jury with an opportunity to find Greyhound liable for punitive damages based upon a theory of vicarious liability, as the Pennsylvania instructions had done. Having relied in good faith on the Pennsylvania jury's determination of independent punitive liability,[12] this Court instructed the jurors that they were to fix the amount of punitive damages against Greyhound and Anderson separately in order to punish them for their outrageous conduct. (Dkt. No. 785 (Transcript of 5/30/18 ("Trans.") 4308–4309). Despite an

---

[11] The Court acknowledges that the Pennsylvania Superior Court "need not and do[es] not address whether the trial court erred in its rulings concerning . . . whether there was sufficient evidence to support an independent liability claim against Greyhound for its own actions as a company," but also states "there was not sufficient evidence for the jury to find that Greyhound as a company consciously disregarded a risk that it subjectively appreciated" *Livingston*, 208 A.3d at 1131, 1137.

[12] The Pennsylvania verdict form required jurors to answer "Yes" or "No" to the question "Do you find the conduct of Defendant, Greyhound Lines, Inc. was outrageous, meaning malicious, wanton, willful, oppressive or showing reckless indifference to the interests of Plaintiffs?" (Dkt. No. 218-13 at 6). The jury checked "Yes." (*Id.*).

intention to adhere to Pennsylvania law, this Court did not instruct the jury on a theory of vicarious liability. Comparatively, the Pennsylvania jury instructions stated in relevant part that:

> [I]f you find the conduct of the defendant or defendants was outrageous, you may award punitive damages . . . Members of the jury, you may also award punitive damages against Greyhound if you find that the actions of Sabrina Anderson, first, were outrageous, second, occurred during and within the scope of Sabrina Anderson's duties, and third, were not committed to satisfy Sabrina Anderson's personal ill-will or malice, but instead were committed with the intent to further Greyhound's interests.

(Dkt. No. 671-3 at 717).

Because the Pennsylvania jury was given an instruction as to vicarious liability, and the Pennsylvania verdict sheet asked the jurors to determine one total amount in punitive damages "[a]s to Greyhound Lines, Inc. and/or Sabrina Anderson," (Dkt. No. 218-13, Question 9), the Pennsylvania Superior Court justifiably affirmed the punitive damages verdict. There was sufficient evidence for the jury to have found Greyhound vicariously liable, the jury was instructed on this theory of liability, and the verdict form did not foreclose the possibility that the jury awarded damages against Greyhound on the basis of vicarious liability alone.

The verdict sheet in *Bauta*, however, did foreclose this basis of liability. Recognizing an inconsistency between Pennsylvania law and the structure of the Pennsylvania verdict sheet, the Court directed the jury to award two separate amounts for Anderson and Greyhound. *See* Trans. 4199–20. While Pennsylvania law allows Greyhound to be held vicariously liable for Anderson's conduct,[13] the reverse is not true—Anderson could not be liable for Greyhound's conduct. Accordingly, the *Bauta* jury received the following verdict form to determine punitive damages:

1. STATE THE TOTAL AMOUNT OF PUNITIVE DAMAGES THAT PLAINTIFF JOSE BAUTA HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE SHOULD BE IMPOSED AS A RESULT OF THE ACTIONS OF GREYHOUND AND SABRINA ANDERSON:

---

[13] Although the jury instructions did not mention vicarious liability, the Court was aware of this basis of liability.

10

      a)    Punitive Damages for Greyhound's conduct:    $ _____

      b)    Punitive Damages for Sabrina Anderson's conduct:    $ _____

      c)    Total Punitive Damages Award (a + b):    $ _____

(Dkt. No. 697).

Neither the verdict form nor the instructions in *Bauta* provided the jury with an opportunity to find Greyhound vicariously liable, despite this being a valid theory of liability under Pennsylvania law. The Pennsylvania Superior Court's review of the evidence and determination that Greyhound could be held punitively liable based solely on a theory of vicarious liability revealed to this Court that it has erred in its failure to instruct the jury on this theory. The Court warned Bauta that it may have good reason in the future to reconsider its decision, and that good reason is here. (Order dated 3/10/2017); *cf. Zdanok*, 327 F.2d at 953.

If the Court had knowledge of the Pennsylvania Superior Court's decision prior to the *Bauta* trial, it would have instructed the jury to determine punitive damages based on Anderson's conduct and Greyhound's vicarious liability only. Because the Court did not give this instruction, both Parties were deprived of the right to a vicarious liability determination; Greyhound should not be liable for an unsubstantiated verdict based solely on independent liability, and Bauta should not be prevented from receiving an award based on the valid basis of vicarious liability. The only just way to correct this error is to retry the issue of punitive damages based on Anderson's conduct lone, with the possibility that Greyhound be held vicariously liable for it in a separate amount, and give appropriate instructions that align with the Pennsylvania Superior Court's decision.[14]

## CONCLUSION

For the reasons stated herein, the Court finds the jury instructions and form provided in

---

[14] The punitive verdict judgment with respect to Anderson will remain in place. I have considered Greyhound's other arguments with respect to judicial estoppel and find them lacking.

*Bauta* constitute clear error, which is an adequate justification for reconsideration under Rule 54(b). *See Virgin Atlantic Airways, Ltd.,* 956 F.2d at 1255 (quoting Wright, Miller & Cooper, 10 Fed. Prac. & Proc. Civ. § 4478). Greyhound's motion to vacate and set aside the verdict for punitive damages is GRANTED. The Court DENIES Greyhound's request to dismiss Plaintiff's claim for punitive damages or file a motion for summary judgment. The Court orders a new trial as to punitive damages based on a theory of vicarious liability.

SO ORDERED.
/s/
Ramon E. Reyes, Jr.
United States Magistrate Judge

Dated: December 6, 2019
      Brooklyn, NY